In re Carl E. HANKINS, Jr., Debtor.

Gertrude HOLL, Plaintiff,

v.

Carl E. HANKINS, Jr., Defendant.

Bankruptcy No. 95–11687.
Adv. No. 95–1177.

United States Bankruptcy Court,
D. New Hampshire.

Aug. 29, 1996.

Bruce R. Jasper, Elliott, Jasper & Stamatakis, Newport, NH, for Plaintiff.

Steve J. Bonnette, Bonnette & Ryan, Keene, NH, for Defendant.

Jeffrey Schreiber, Trustee, Schreiber & Associates, Danvers, MA.

## ORDER

JAMES E. YACOS, Chief Judge.

This adversary proceeding was tried before the Court at an all-day evidentiary hearing on August 26, 1996 on a Complaint Objecting to the Discharge of the debtor that raised a number of asserted grounds under § 727 of Bankruptcy Code to bar discharge. The debtor is a manager of a restaurant operation owed by his father that was incorporated in October of 1993. The debtor is only an employee of that corporation and holds no stock interest or other position in the corporation.

The debtor briefly held a one-third interest in the corporation (for 6 days in October of 1993) but he transferred that stock back at the demand of his father in that month. He relinquished a position as a director of the corporation in January of 1994 also at the demand of his father.

The chapter 7 bankruptcy petition was filed by the debtor on July 13, 1995. During the trial the Court made bench rulings in favor of the defendant with regard to the grounds under §§ 727(a)(2) and 727(a)(5) whereby the Court found that the plaintiff failed to establish the requisite elements for denial of discharge under those provisions of the statute as related to the 1993 events. The Court will not repeat its findings and conclusions in that regard but they are incorporated herein by reference from the bench ruling earlier.

The plaintiff contends however under its remaining § 727(a)(4) ground relating to false oath that the debtor nevertheless should be barred from discharge by virtue of his answers to certain questions on the Statement of Affairs included within his bankruptcy schedules. Certain of these questions required reference to a prior corporate entity, C & S Hankins, Inc., that operated the same

restaurant in Claremont, New Hampshire from April of 1993 to October of 1993. That corporate entity was owned equally by the debtor and Sandra Holl, his then-girlfriend, who is also the daughter of the plaintiff in this proceeding. That business operation terminated in October of 1993 when the debtor's father evicted both the debtor and Sandra Holl for nonpayment of rent. The restaurant resumed operation under the new corporate entity, Buster's Restaurant, Inc., within ten days after the closure in October of 1993.

### (Questions 17 and 18)

■ The remaining Count under § 727(a)(4) charged false oaths in the statement of affairs when the debtor answered allegedly knowingly and fraudulently in a false manner the questions following question 16 under the Statement of Affairs which are the questions dealing with any bookkeepers or accountants for a business; any inventories taken regarding a business; and who had the records from that business operation.

In is uncontroverted that the debtor accurately answered question 16 which asks for any involvement the debtors had in the prior two years with regard to any business and did answer accurately that he was involved in C & S Hankins, Inc., a restaurant operation in Claremont, New Hampshire, from April 1993 to October of 1993 and further answered accurately that he was involved in Buster's Restaurant, Inc. a restaurant at the same location in Claremont, New Hampshire from October 1993 to January 1994 as a director of that corporation.

The controversy is that with regard to question 17 and 18 dealing with books, records, financial statements and inventories taken the debtor left those blank and just checked off "none" with regard to each of those questions other than answering question 17(c) as to books and records answered that books and records are in his own possession.

It is true that a quick reading of question 16 through 18, including the parenthetical notation above question 16, on the official form of questions under the Statement of Affairs which are located in the debtor's

schedules (Court Doc. No. 1) would indicate that the intent of the drafters of that form would be that answers to questions 17 and 18 should refer to any businesses listed under question 16 and not just to the existing situation of "the debtor" for the pre-bankruptcy periods referenced by those latter questions. However, a closer reading of the actual language of the questions on the form supports the debtor's contention that he understood question 17 and 18 to simply refer to *his* individual situation and that the response "none" would be an honest and accurate response to the questions as phrased. That being so, the Court cannot find that his responses to those questions were knowingly and fraudulently done with intent to deceive the trustee and/or creditors as is required to support denial of discharge under § 727(a)(4) of the Bankruptcy Code. Moreover, the Court takes into account in this regard that the debtor having truthfully listed the prior business corporation involvements accurately neither the trustee nor creditors would have been deflected from pursuing questions about bookkeepers, inventories, and records from those business operations. It also should be noted that the plaintiff's daughter was in fact the bookkeeper for those business operations and obviously would have known enough to either inquire further directly or make known to the trustee any need for further investigation as to the matters covered by questions 17 and 18 of the Statement of Affairs.

### (Question 1)

■ The false oath Count also contends that when the debtor listed his income for the prior years under Question 1 of the Statement of Financial Affairs he listed $11,-600 for the year 1994 and listed $4,200 for essentially one-half of the year 1995 before he filed bankruptcy on July 13, 1995.

The record is not very clear as to what the debtor's actual income might have been if it is true as the plaintiff alleges and charges that he was not reporting all of his income from the business to the Internal Revenue Service by taking cash out of the register and/or taking tips and not reporting the same. However, at the maximum from the

record before the Court it may be inferred that about $16,000 of extra income that was "under the table" so to speak might be charged as a more accurate answer to that question for bankruptcy schedules purposes. In other words for 1994, instead of reporting $11,600, he arguably should have added another $14,000 or as the Court stated during the hearing probably $16,000 if you extrapolate for the other two months of the year or a total of $28,600.

The issue before the Court then is if the debtor really had something like $28,000 to $30,000 income during a particular year and only reported something substantially less than that in the amounts indicated was that done knowingly and fraudulently within the meaning of § 727(a)(4).

It is true that the plaintiff has presented a case in which the Court may well be justified in making an inference that Carl Hankins, Jr. is not as naive as he sounds in his testimony and/or his statements to the family law attorney representing his child Chelsea with regard to his dire problem about showing any income to the IRS or State of New Hampshire. I think he was quite aware of the obligations he had to regarding Sandra Holl and Chelsea but he wasn't about to disclose voluntarily any money that he might be taking out of the register and taking in tips and not reporting.

It also may be that the debtor has a duty to disclose nonreported income in his bankruptcy schedules even though that may create a criminal violation with regard to the IRS or create more financial problems for him than he already has. However, again, the maximum of reported and unreported income that could be found from this record is perhaps a total of $30,000 per year not including the value of having the apartment and the use of a company car. As to the latter matters I believe those clearly would be disclosed or known to the plaintiff since her daughter lived in the apartment previously and had to know about the car. The Court views this as a possible under-reporting of income, if it is that, of approximately $20,000 over what was being reported.

That under-reporting may be a violation of the Internal Revenue Code and it may be some violation of what happened in the Family Court but those agencies and those courts are able to take care of themselves and protect their own interests. The real question is whether the Court here should deny or can deny a discharge of any debtor because the debtor fails to disclose these types of fact even assuming that I would make a definitive finding as to under-reporting. As I say the record is somewhat sketchy in that regard in terms of concrete numbers that could support an inference but I believe the maximum would be approximately $20,000 of unreported income. On balance I don't believe that I can infer that this debtor when he listed his income as he did knowingly and fraudulently intended to deceive either the trustee or the creditors in that regard.

It needs to be understood in this context that a chapter 7 trustee, if told that a debtor has $30,000 income, instead of $10,000 or so, by that fact has nothing to liquidate to pay creditors simply because the income in the past was higher than the debtor is stating. The relevance has to come by some discrepancy large enough to set a trustee on fire so to speak to look for more assets. I doubt that in today's age knowing that the debtor really might have had $30,000 of income rather than what was being reported would have generated much excitement from any trustee to go looking for undisclosed real property holdings in California or elsewhere or the proverbial bank account in Switzerland that would have absorbed that excessive income.

The Court therefore will find that while there may have been an inaccurate statement with regard to income the inaccuracy cannot be laid to a knowing and fraudulent intent to deceive the creditors in this bankruptcy estate and/or the trustee in bankruptcy in any sense relevant to § 727(a)(4) that would justify a complete denial of the debtor's discharge.

We have to remember that this complaint doesn't seek simply to discharge the debt owing to the plaintiff Gertrude Holl * but

---

* Gertrude Holl, the mother of Sandra Holl, obtained a $35,000 judgment against the debtor

pre-bankruptcy, apparently by taking an assign-

seeks to deny discharge of all debts. Therefore it is treated as I've said akin to "capital punishment" of a bankruptcy debtor. The grounds have to be established only by a preponderance of the evidence but that evidence has to be specific enough so that the Court can make specific findings that would support an inference of falsity and the requisite intent. I don't believe this evidence does.

While I don't need to dwell on the situation any further to support this Order I should note that what I heard in the trial is a family feud of sorts between the Hankins family and the Holl family over a number of disputes that do not have a lot to do with bankruptcy per se. For whatever reason these two people got involved in a restaurant operation, with nothing in writing basically, with Mr. Hankins' father bankrolling the operation, and with at most Sandra Holl having $23,000 to $40,000 into this enterprise as a risk investment. When she was taken out of the business she settled for a promissory note of $35,000 at the end of 1993 to settle all matters between themselves including obvious acrimony and problems regarding their child that was born during this time period. That really in my judgment settled things back in 1993 although as it turned out the debtor didn't pay the $35,000 that was promised prior to bankruptcy.

The fact of the matter is that people make bad investments all the time and that does not necessarily mean that they are nondischargeable in bankruptcy or that failure to honor them ipso facto denies the debtor a discharge. I can understand from what I've heard here today that both families have a lot to be aggrieved about but I don't find—as I thought when this hearing started—that Sandra Holl was set up and "taken to the cleaners" intentionally from the beginning of her involvement in this business. I think what happened was quite understandable when the break up between parties previously romantically engaged occurred and then the business relationship had to be broken up. What happened is that Sandra Holl herself agreed to settle things at the end of December 1993 and instead of suing and

getting a recovery on that before bankruptcy did not do so. The transfers involved are all beyond a one year period prior to bankruptcy so no relief is otherwise available under § 727 as this matter was presented to the court.

The Court has considered carefully the parties' contentions and believes it has accurately acted on what the situation was. The Court's judgment does not have any meaning in terms of validating the way Mr. Hankins dealt with the situation or the way he dealt with his new child and support obligations. Those matters are left to the appropriate courts or other agencies involved.

A separate final judgment will be entered in favor of the defendant.

### FINAL JUDGMENT

This proceeding having come before the Court for trial on August 26, 1996 and in accordance with the findings and conclusions in the order entered separately this date it is accordingly,

ORDERED, ADJUDGED and DECREED as follows:

1) Judgment is entered in favor of the defendant Carl E. Hankins, Jr.

2) Each party shall bear their own fees and costs.

This is a core proceeding in accordance with 28 U.S.C. § 157(b) as to which this Court has jurisdiction of the subject matter and the parties.

ment of a $35,000 promissory note issued to her daughter.